FILED
CLERK, U.S. DISTRICT COURT
DEC 18 2001
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
DEC 18 2001
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELA-LISA FRIEDMAN,<br><br>Plaintiff,<br><br>v.<br><br>QUEST INTERNATIONAL FRAGRANCES CO.,<br><br>Defendant. | CASE NO. CV 00-11025 AHM (AJWx)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

This matter is before the Court on Defendant Quest International Fragrances Co.'s ("Quest") Motion for Summary Judgment. Quest seeks summary judgment as to each of Plaintiff's five causes of action for breach of contract, misappropriation of trade secrets, promissory fraud, intentional misrepresentation, and unfair business practices.[1] Because the Court finds that Plaintiff has failed to proffer sufficient factual evidence in support of at least one of the necessary elements of each of her claims, the Court GRANTS Defendant's motion.

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

---

[1] Jurisdiction over this matter is based on diversity. (Second Amended Complaint ("SAC") ¶ 1). Plaintiff's claims are governed by California law.

# FACTS[2]

Defendant Quest manufactures the oil for fragrances and a variety of other products distributed by beauty companies and other business entities. (Mot. at 2). Plaintiff is an advertising and marketing consultant who has worked in a variety of industries, including the fragrance and cosmetic industries. (B. Friedman Decl. ¶ 2). In 1994, Plaintiff was taking courses at the Fashion Institute of Technology ("FIT"). (Opp'n. at 4). In connection with her studies at FIT, Ms. Friedman wrote a thesis paper on the marketing of cosmetics and fragrances. (B. Friedman Decl. ¶ 3). Her paper was an in depth study of the top ten women's fragrances for 1993. The paper did not contain any specific marketing or promotion ideas. (B. Friedman Decl. ¶ 3).

To complete her thesis at FIT, Mr. Friedman needed to obtain industry data concerning sales in 1993. (Opp'n. at 4). To this end, Plaintiff met with Paul Austin, the Marketing Manager for Quest, at an FIT function in late 1994. (Opp'n. at 4). Austin agreed to provide the plaintiff with the information she needed on the condition that he was given a copy of the completed paper. (B. Friedman Decl. ¶ 4). When the paper was completed, Plaintiff sent a copy to Mr. Austin, who read the paper and indicated he wanted his superiors to read it as well. (*Id.*).

In early 1995, Plaintiff met Mr. Austin, Herb Kelhoffer, Quest's head of North American operations, and Yves de Chiris, Quest's head of global operations, at Quest's New York offices. (*Id.* at ¶ 5). All three individuals asked the plaintiff if she had tangible concepts that could be developed into fragrances. (*Id.*). By this time, Plaintiff had begun developing two venture proposals for marketing fragrances and cosmetics: "Kiki's Stuff" and "Girls with Guitars."

---

[2] Neither side did an adequate job of pointing the Court to the portions of the record supporting their claims, but this section does present those facts necessary to provide an understanding of the gist of the case. The specific facts alleged to be at issue in each of Plaintiff's claims are discussed *infra*.

(*Id.*). The "Kiki's Stuff" project was conceived as a co-venture between the cosmetic and motion picture industries. (Opp'n. at 8). The project involved a motion picture developed by Ms. Friedman featuring a group of young girls from New York who win a scholarship to Paris and end up launching their own fragrance. (*Id.*). The movie was to serve as a vehicle for launching the fragrances and cosmetics, which would have individual scents and characteristics tied to the movie. (*Id.*). The "Girls With Guitars" project was conceived as a co-venture between the cosmetic and music industries. (Opp'n. at 7). In the GWG project, the fragrances and cosmetics are launched and promoted through a global rock concert celebrating women in music. (*Id.*).

In late 1996, Plaintiff approached Mr. Austin about her marketing ideas and asked Mr. Austin to sign confidentiality agreements on behalf of Quest in connection with her two proposals. Plaintiff envisioned Quest's role as soliciting interest in her projects and determining companies which may be interested in her work. (Statement of Genuine Issues ("SGI") p. 111, ¶ 5). Based on Plaintiff's assurances that if she got a deal with a beauty company Quest would be the fragrance supplier, Mr. Austin agreed to try to solicit interest in Plaintiff's proposals. (Mot. at 4). To this end, on December 18, 1996, Plaintiff and Quest executed a confidentiality and non-competition agreement regarding the "Kiki's Stuff" project. (SAC, Ex. A). In addition, the two executed an identical agreement regarding the "Girls With Guitars" project on January 8, 1997. (SAC, Ex. B).[3] Both agreements recognized that Plaintiff "created, developed and acquired certain unique and valuable ideas, theories, plans information and contacts..." (SAC, Exs. A, B). In addition, the agreements obligated Quest to maintain the confidentiality of Plaintiff's works, and to use the information solely

---

[3]Paul Austin signed both agreements on behalf of Quest. (SAC, Ex. A, B).

3

to determine interest in the projects. (*Id.*).[4] Furthermore, the agreements prohibited Quest for a period of five years from using the confidential information to compete with the plaintiff in connection with the venture proposals. (*Id.*).

After Plaintiff disclosed her venture proposals to Quest, Paul Austin repeatedly told the plaintiff that her ideas were unique and valuable, and that Quest's upper management would ultimately be convinced of their sales potential. (B. Friedman Decl. ¶ 8). In addition, Quest approached three of its biggest clients – Estee Lauder, Avon, and Coty – about Plaintiff's concepts. (Opp'n. at 1). To facilitate these meetings, Plaintiff prepared "pitch blurbs" to allow Quest to give third parties the flavor of the venture proposals without revealing any confidential information. (Opp'n. at 11). However, despite her having prepared such "pitch blurbs," several incidents caused Plaintiff to become concerned that Quest was not protecting the confidentiality of her venture proposals. (Opp'n. at 11). For example, Plaintiff claims that on February 19, 1997, Mr. Austin informed her that he had gone on several job interviews and was getting offers based on the buzz about her innovative venture proposals. (B. Friedman Decl. ¶ 16). In addition, on August 26, 1997,[5] Neil Wasser, a Quest account manager, allegedly suggested to the plaintiff that he could disclose the venture proposals to Avon without a non-disclosure agreement because Avon could piggyback off the Quest non-

---

[4]The Agreements defined Confidential Information as, "all trade secrets, reports, business plans, studies, development methodologies, financial projections, research, scripts, treatments, forecasts, processes, know-how, business contacts, financial and technical information, documents, agreements, correspondence, financial analysis and such other information concerning the Venture." (SAC, Exs. A, B at ¶ 2).

[5]Ms. Friedman's declaration mistakenly refers to this event as being in the year 2001.

4

disclosure agreement. (B. Friedman Decl. ¶ 16).[6] However, Plaintiff rejected Wasser's request, and stated that without a non-disclosure agreement signed by Avon, Wasser could reveal only limited information about the venture proposals. (B. Friedman Decl. ¶ 26).

After Plaintiff was ultimately unsuccessful in securing a deal for her venture proposals, her concerns regarding Quest were allegedly confirmed through the launch of Estee Lauder's "Tommy Girl" fragrance and Avon's "Women of Earth" product line. (Opp'n. at 13, 17). As to both "Tommy Girl" and "Women of Earth," Plaintiff contends that the marketing campaigns behind both fragrances reflected the use of her ideas for "Kiki's Stuff" and "Girls With Guitars." (SAC ¶ 21). Specifically, Plaintiff contends that "Tommy Girl," whose marketing campaign included sponsoring all-female music tours and producing an all-female music CD compilation, was marketed in a manner similar to her idea for "Girls With Guitars." (Pellinger Decl. ¶ 16). In addition, Plaintiff argues that Avon's "Women of Earth," which utilized a similar all-female music CD compilation in its marketing scheme, was marketed in a manner similar to her venture proposals. (Pellinger Decl. ¶ 15). As a result, Plaintiff ultimately came to believe Quest had disclosed confidential information regarding her venture proposals and brought this action against Quest for breach of contract, misappropriation of trade secrets, promissory fraud, intentional misrepresentation, and unfair business practices. The defendant's motion addresses the sufficiency of each claim.

## MOTION STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment

---

[6]The Court construes this oddly-worded statement to mean "Wasser suggested he be allowed to disclose the venture proposals to Avon if Avon agreed to be bound by Quest's non-disclosure agreement."

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when, as here, the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999) (*citing Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F. R. Civ.

1  P. 56(e). Summary judgment will be entered against the non-moving party if that
2  party does not present such specific facts. *Id.* Only admissible evidence may be
3  considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman*
4  *Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

5  "[I]n ruling on a motion for summary judgment, the nonmoving party's
6  evidence 'is to be believed, and all justifiable inferences are to be drawn in [that
7  party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 1551-52,
8  143 L.Ed.2d 731 (1999) (*citing Anderson*, 477 U.S. at 255). But the non-moving
9  party must come forward with more than "the mere existence of a scintilla of
10 evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a
11 whole could not lead a rational trier of fact to find for the nonmoving party, there
12 is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*
13 *Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

### I. MISAPPROPRIATION OF TRADE SECRETS CLAIM

California has adopted the Uniform Trade Secrets Act ("UTSA") which codifies the basic principles of common law trade secret protection. CAL. CIV. C. § 3426 - 3426.11 (West 1997). To establish a violation under the UTSA, it must be shown that a defendant has been unjustly enriched by the improper appropriation, use or disclosure of a "trade secret." *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F. 2d 511, 520 (9th Cir. 1993). To find misappropriation, California courts require that the trade secret be used by the defendant or disclosed by the defendant to a third party. *Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001).

Here, Plaintiff alleges that both her "Kiki's Stuff" and "Girls With Guitars" venture proposals are entitled to trade secret protection. (SAC ¶ 32; Opp'n. at 18). Specifically, Plaintiff contends that the written venture materials for "Kiki's Stuff" and "Girls With Guitars" constitute her trade secrets. (Opp'n. at 18;

Swingle Decl., Exs. D, E). In her response to Defendant's interrogatories, Plaintiff describes her venture proposals as involving three levels of unique and valuable trade secrets: (1) the marketing mechanism itself, by which one starts with a beauty fragrance and cosmetic product line and essentially "reverse engineers" it into an entertainment conglomerate; (2) the fragrance and/or cosmetic lines themselves; and (3) the entertainment content, including the motion picture and the concert theme. (Swingle Decl., Ex. B at 16-20).[7]

Plaintiff contends Quest misappropriated her trade secrets by disseminating information regarding her venture proposals to vendors of fragrance products and collaborating with those vendors to exploit such products. (SAC ¶ 34).[8] However, as evidence that Quest in fact disseminated Plaintiff's trade secret information, Plaintiff's opposition points only to Quest having been in frequent contact with fragrance companies such as Avon and Estee Lauder, and those companies (Avon and Estee Lauder) having later produced marketing plans "strikingly similar" to Plaintiff's ideas for "Kiki's Stuff" and "Girls With

---

[7]At one point in her opposition, Defendant apparently attempts to include a fragrance with a hint of cannabis entitled "pot top notes" as another element of her trade secrets. (Opp'n. at 14). However, because Plaintiff later describes her trade secrets as only the two written venture proposals (Opp'n. at 18; Swingle Decl., Exs. D, E), and there is no mention of this cannabis fragrance in those documents, that idea cannot constitute part of the claimed trade secret.

[8]The defendant argues at length that Plaintiff's ideas do not constitute protectable trade secrets as a matter of law. (Mot. at 12-19). There is some authority that a marketing concept cannot be a trade secret because it does not create a continuing competitive advantage by virtue of its confidentiality. *Richter v. Westab, Inc.*, 529 F. 2d 896, 900 (6th Cir. 1976). However, *Richter* was decided under Ohio law, and fails to cite any authority for this proposition. In any event, because the Court finds the plaintiff has failed to provide any evidence of misappropriation by the defendant, it does not reach the issue of whether her "Kiki's Stuff" and "Girls With Guitars" venture proposals constitute trade secrets.

1  Guitars." (Opp'n. at 23).[9] In addition, although not referenced in Plaintiff's
2  opposition, her Statement of Genuine Issues contains the purported evidence she
3  relies on to create a genuine issue as to whether Quest divulged confidential
4  ("trade secret") information to Coty, Avon, and Estee Lauder. (SGI p. 27 ¶ 6, p.
5  39 ¶ 9, p. 55 ¶ 5). The evidence cited consists of Plaintiff's recollections of
6  discussions she had with representatives of Quest, Pellinger's expert declaration
7  and deposition testimony from representatives of Quest. The Court finds that
8  none of the evidence cited provides any direct support for Plaintiff's claim.

9        The best evidence produced by the plaintiff is Pellinger's expert
10 declaration. Pellinger states that, in her opinion,

11     "The theory behind Ms. Friedman's ventures was to launch and promote
12     fragrances against the backdrop of the entertainment industry, and to
13     market and promote the product through the entertainment industry, and to
14     market and promote the product through the particular entertainment
15     medium such that the marketing becomes embedded within the medium.
16     This was strikingly novel." (Pellinger Decl. ¶ 11). Furthermore, she states
17     that, "Absent review of Ms. Friedman's ventures, it is extremely unlikely
18     that Avon, Lauder, and Faberge would have created the marketing
19     initiatives and programs discussed above with respect to Women of Earth,
20     Tommy Girl, and Impulse Spice." (Pellinger Decl. ¶ 18).

21

---

22     [9]As evidence that Estee Lauder's "Tommy Girl" and Avon's "Women of Earth"
23 are "strikingly similar" to Plaintiff's ideas for "Kiki's Stuff" and "Girls With
24 Guitars," Plaintiff cites the opinion of expert witness Gabriela Pellinger. (Pellinger Decl. ¶ 15-16). Defendant objects to this declaration on the grounds that it contains
25 information not disclosed in Ms. Pellinger's expert report and that it lacks a factual
26 basis. The Court finds that paragraphs seven, nine, nineteen, and twenty are inadmissible as lacking foundation. However, as to the material statements – that in
27 Pellinger's view Plaintiff's ideas were novel and material portions of those ideas were
28 evident in Avon's "Women of Earth" and Estee Lauder's "Tommy Girl" marketing campaigns – the defendant's objections lack merit.

9

However, even assuming the truth of Ms. Pellinger's declaration, Ms. Friedman has proffered no direct evidence that the defendant misappropriated her work by disseminating confidential information to those companies. Rather, Plaintiff merely argues that because Quest was in possession of specific information regarding Plaintiff's "Kiki's Stuff" and "Girls With Guitars" venture proposals and Avon and Estee Lauder later launched products using marketing concepts similar to those venture proposals, Quest must have disclosed confidential information regarding the projects to Avon and Estee Lauder. This is akin to *res ipsa loquitur*, and the Court finds that it amounts to nothing more than a "mere scintilla" of evidence. *Anderson*, 477 U.S. at 252. That is insufficient to survive summary judgment.

Moreover, all the *direct* evidence in this case is that the current and former employees of Quest maintained Plaintiff's ideas in strict confidence and only disclosed that which the plaintiff approved for disclosure. (Marder Decl., Ex. F. at 541; Ex. G. at 596-597, 618; Khoury Decl. ¶ 8-12; Burnstein Decl. ¶ 5, 8; Tabasko Decl., ¶ 5). In fact, Karyn Khoury, the Senior Vice President of Estee Lauder's Corporate Fragrance Division, stated unequivocally that Quest never provided Estee Lauder with any marketing, advertising or promotional ideas or concepts for "Tommy Girl." (Khoury Decl. ¶ 8). Similarly, Terry Burstein, the former Director of Global Marketing and Development for Avon, stated that he came up with Avon's "Women of Earth" concept – an idea that was in the works at Avon since the mid-1990s – before ever becoming aware of the plaintiff's ventures. (Burstein Decl. ¶ 15, ¶ 16). At oral argument, Plaintiff's counsel admitted that he did not take the deposition of either Mr. Burstein or Ms. Khoury. As a result, that leaves their statements unrefuted.[10]

---

[10]Because marketing campaigns are often developed well in advance of their formal launch, it would have been important for Plaintiff to establish a chronology creating or permitting a strong inference that the cosmetic manufacturers received her

Furthermore, Plaintiff admitted that she contacted a representative of Estee Lauder regarding her venture proposals in June 1997, and provided that individual with a "brief capsulization" of her ideas. (SGI p. 22 ¶ 1). In addition, in September 1997, Ms. Friedman shared a document describing her ventures entitled "Avon Meeting/Two Beauty Ventures" with representatives of Avon. (SGI p. 24 ¶ 1). Given these disclosures by Plaintiff and the absence of any direct evidence of misappropriation by the defendant, Plaintiff's assertion that Quest divulged confidential information to Avon and Estee Lauder is no more plausible than would be the conclusion that any similarity between Plaintiff's ideas and the marketing plans of Avon and Estee Lauder resulted from Plaintiff's own disclosures. Plaintiff's bare suspicion that the defendant must have misappropriated her confidential information because Avon and Estee Lauder developed marketing plans "strikingly similar" to her ideas is insufficient to survive summary judgment.

## II. BREACH OF CONTRACT CLAIM

Plaintiff's First and Second Causes of Action assert claims for breach of contract against Quest. Plaintiff alleges the defendant breached the Confidentiality and Non-Competition Agreements entered into by Ms. Friedman

---

information sufficiently in advance of the launch to make her conclusions about the misappropriation reasonable. The first mention in the record of a Quest employee speaking with representatives of Estee Lauder and Avon regarding Plaintiff's venture proposals is August 1997. (B. Friedman Decl. ¶ 22, ¶ 25). Nonetheless, Plaintiff contends that the marketing for "Tommy Girl" began to shift towards the use of women in music as early as November 1997 (Pellinger Decl. ¶ 16), and "Women of Earth" began its public sponsorship of the Celine Dion tour in May 1998 (Pellinger Decl., Ex. 30 at 75). Thus, Plaintiff's position is that Estee Lauder radically altered its marketing campaign and created an entirely new one based on her venture proposals in four months and Avon did the same in approximately nine months. Given the size and complexity of those campaigns and the inherent difficulty just of negotiating all the necessary contracts (to mention just one factor), the Court finds that such an inference, without concrete evidence supporting it, is unreasonable, especially as to Estee Lauder.

11

and Quest with regard to both the "Kiki's Stuff" and the "Girls With Guitars" venture. (SAC ¶ 24, 28). As to each cause of action, Defendant argues that the record is devoid of evidence that it breached the agreements.

In opposition to Defendant's motion, Plaintiff makes two arguments. First, Plaintiff argues that Quest's frequent contact with Avon and Estee Lauder, in combination with the striking similarity between Plaintiff's ideas and the marketing initiatives of those companies, creates a genuine issue of fact as to whether Quest breached the Confidentiality Agreements. (Opp'n. at 24). However, as Defendant points out, even assuming the marketing initiatives of those third parties are similar to Plaintiff's ideas, Mr. Friedman has no evidence that Avon, Estee Lauder, or any other third party received confidential information *from the defendant*. (Reply at 18). In fact, the only direct evidence before this Court indicates that the defendant did not disclose confidential information to any third party. (Marder Decl., Ex. F. at 541; Ex. G. at 596-597, 618; Khoury Decl. ¶ 8-12; Burnstein Decl. ¶ 5, 8; Tabasko Decl. ¶ 5). Plaintiff's mere suspicions that confidential information must have been disclosed is insufficient to create a genuine issue as to whether Quest breached the confidentiality agreement.

Plaintiff also argues that Quest breached the non-compete provision of the agreements by supplying the fragrances for Avon's "Women of Earth" and Estee Lauder's "Tommy Girl" products, each of which were allegedly marketed using Plaintiff's ideas. (Opp'n. at 24; SGI p. 145 ¶ 45).[11]

As noted above, Plaintiff has produced no direct evidence that Quest disclosed confidential information to any third party, or used such information in any way that would violate the agreement. Rather, Plaintiff bases her claim on

---

[11] Both agreements state, "The Undersigned agrees that neither the Undersigned nor any firm controlled by or affiliated with the Undersigned will use the Confidential Information disclosed hereunder to compete with Friedman in connection with the Venture for a period of five (5) years after the date hereof." (SAC, Ex. A, B).

12

1  the declaration of one expert stating that Avon and Estee Lauder used marketing
2  plans similar to her ideas. Even assuming the expert is correct about the
3  similarities, there is no evidence that either company obtained confidential
4  information regarding the plaintiff's ideas *from the defendant*. In other words, as
5  noted above, there is no direct evidence that Quest misused Plaintiff's
6  confidential information. Absent breach of its agreement not to so misuse such
7  information, the Court does not see how Quest could or did violate the covenant
8  not to compete by merely supplying the fragrances for two product lines that
9  allegedly used marketing campaigns similar to Plaintiff's ideas. For that reason,
10 summary judgment as to Plaintiff's breach of contract claim is warranted.

## III. PROMISSORY FRAUD CLAIM

12  "Promissory Fraud" is a subspecies of an action for fraud. *In re*
13  *Washington Trust Deed Service Corp.*, 224 B.R. 109, 113 (9th Cir. 1998). A
14  promissory fraud action lies where the defendant makes a promise to do
15  something without any intention to perform. *Id.* To maintain an action for deceit
16  based on a false promise, one must prove that the promisor did not intend to
17  perform at the time he or she made the promise. *Tarmann v. State Farm Mutual*
18  *Automobile Insur. Co.*, 2 Cal. App. 4th 153, 159 (1991).
19  Here, Plaintiff's claim is based on the alleged promises of Paul Austin and
20  others at Quest to work hard to create interest in Plaintiff's projects on the part of
21  third party fragrance companies. (Opp'n. at 24; B. Friedman Decl. ¶ 9-11).
22  Plaintiff argues that Quest made these promises to prevent her from taking her
23  ideas elsewhere. (Opp'n. at 25).
24  Plaintiff has produced no evidence that *at the time those representations*
25  *were made* Quest had no intention to perform. Rather, she merely argues that the
26  claims were false because ultimately Quest contacted only Avon, Estee Lauder,
27  and Coty, its best customers, regarding the plaintiff's ideas. (Opp'n. at 25). This
28  is plainly insufficient to show that Quest had no intention of performing at the
time the promises were made.

## IV. INTENTIONAL MISREPRESENTATION CLAIM

To support a claim for intentional misrepresentation, the plaintiff must show (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages. *Anderson v. Deloitte & Touche LLP*, 56 Cal. App. 4th 1468, 1474 (1997). Here, Plaintiff again relies on Quest's alleged misrepresentation in stating that it would work hard to create interest in Plaintiff's marketing projects. (Opp'n. at 24). As stated *supra*, Plaintiff has failed to produce any evidence that Quest made those statements with knowledge of their falsity. As a result, Defendant is entitled to summary judgment on that claim.

## V. UNFAIR BUSINESS PRACTICES CLAIM

As the plaintiff cannot support any of her other claims for relief, her unfair competition claim must be dismissed. *Silicon Knights v. Crystal Dynamics, Inc.*, 983 F. Supp 1303, 1316 (N.D. Cal. 1997) (dismissing plaintiff's unfair business practices claim where there was no underlying cause of action to support the claim).

## CONCLUSION

For the foregoing reasons, and good cause appearing therefor, the Court GRANTS Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

DATE: December 18, 2001

A. Howard Matz
United States District Judge