ORIGINAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELA-LISA FRIEDMAN<br><br>Plaintiff,<br><br>v.<br><br>QUEST INTERNATIONAL FRAGRANCES CO., a corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CV 00-11025 LGB (AJWx)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

I. INTRODUCTION

This action arises out of Defendant's alleged misappropriation of fragrance marketing plans developed by Plaintiff. Currently before the Court is Defendant's motion for summary judgment on the issue of whether Plaintiff's ideas qualify for trade secret status.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

The operative complaint in this action is the second amended complaint which Plaintiff, Bela-Lisa Friedman, filed on February 16, 2001. The complaint alleges the following five causes of action against Defendant, Quest International Fragrances Company ("Quest"): 1) breach of contract, 2) misappropriation of trade secrets, 3) promissory fraud, 4) intentional misrepresentation and 5) unfair business practices. On December 18, 2001, Judge Matz granted Defendant's motion for summary judgment on all five of the claims. The Ninth Circuit reversed the judgment and remanded the case. See Docket No. 132, 133. In so doing, the circuit court directed the district court to address on remand whether Plaintiff's ideas qualify for trade secret protection.[1]

Judge Matz issued a minute order on July 7, 2003 permitting Quest to file a motion for summary judgment on the issue of whether there was a genuine issue of fact that Plaintiff's ideas qualified for trade secret status.[2] On March 1, 2004, Defendant filed this summary judgment motion solely on the issue of whether Plaintiff's ideas constitute trade secrets. The motion has been fully briefed.

The following evidence is relevant to the current motion. Friedman is an advertising and marketing consultant who is also a

---

[1] Plaintiff voluntarily dismissed the unfair business practices (section 17200) claim on March 2, 2004.

[2] Judge Matz recused himself from the case on November 26, 2003, and the case was transferred to this Court.

2

musician. <u>Dec. Friedman</u>, ¶¶ 2-3. In 1994, Plaintiff took courses at the Fashion Institute of Technology ("FIT") and wrote a thesis paper on the marketing of cosmetics and toiletries. <u>Id.</u>, ¶ 4; <u>Dec. Brophy</u>, Exh. G. She met Paul Austin in late 1994 when he was speaking at an FIT function. <u>Dec. Friedman</u>, ¶ 5. She discussed her paper topic with him, and he agreed to provide her with data she needed if she would give him a copy of the completed paper. <u>Id.</u> ¶ 5. After reading Plaintiff's completed paper, Austin called Friedman and told her that he had read her paper and wanted his superiors to read it. <u>Id.</u>

Austin was a marketing manager for Quest. Quest manufactures the oil for fragrances and a variety of other products distributed by beauty companies and other business entities. At the time Austin provided the data for Friedman's paper, Quest, a multinational fragrance supplier, had only recently opened an office in New York. <u>Dec. Pepperman</u>, <u>Depo. Austin</u>, Exh. A, 6:13-17. Austin's job was to help establish Quest as a player in the fine fragrance domain in the United States, where it did not have a strong presence. <u>Id.</u>, 6:22-7:5.

In early 1995, Friedman met with Austin at the New York offices of Quest where he introduced her to Herb Kelhoffer, Quest's head of North American operations, and Yves de Chiris, Quest's head of global operations. <u>Dec. Friedman</u>, ¶ 6. At that time, Austin, Kelhoffer, and de Chiris asked Friedman if she had tangible concepts. <u>Id.</u> On December 18, 1996, Plaintiff entered into a confidentiality agreement with Quest concerning her

3

"Kiki's Stuff" ("KS") venture proposal. The parties entered into a confidentiality agreement regarding Friedman's Girls With Guitars ("GWG") venture proposal on January 8, 1997. Id., Exh. 28, Exh. 29. Both agreements state that Plaintiff has "created, developed and acquired unique and valuable ideas, theories, plans, information, and contacts." Id. They both state that Quest agrees not to disclose or divulge any confidential information and that Quest will not use the confidential information to compete with Friedman in connection with the venture. Id.

GWG is a marketing plan that Friedman created as a co-venture between the cosmetic and music industries. The fragrances and cosmetics are launched and promoted through a global rock concert celebrating women in music. The concert would serve as the vehicle for launching the fragrance and the marketing would be embedded in the performance. After the concert, the product would be repromoted through the creation of a GWG record and a traveling photographic and fashion exhibit celebrating women and rock. The marketing concepts would become a profit center for the fragrance manufacturer and create new distribution centers. The venture plan also contained details regarding product packaging and pricing, the target market, the psychological impact on the market, elements of the exhibition, and new merchandising channels. Id., Exh. 30, Exh. 33.

KS is also a marketing plan Friedman developed as a co-

4

venture between the cosmetic and motion picture industries.[3] The idea is that a movie would become the marketing and promotional vehicle for the cosmetics. The movie is about girls from New York who win a scholarship to Paris and end up launching their own fragrance. The movie would serve as a vehicle for launching the fragrances and cosmetics which would have individual scents and characteristics tied to the movie characters. Similar to GWG, the marketing is embedded in the movie; the movie is the tool for promoting the product; the marketing becomes a profit center rather than an expense; and the venture would create new distribution centers. The venture plan also includes details about the target market, the psychological impact on the target market, projected sales volumes, traditional difficulties with reaching the audience, and new product placement opportunities. Id., Exh. 31, 33.

Austin represented to Friedman that he and other people at Quest thought that the ideas were unique and valuable. Id., Exh. 2, 3, 5. Austin and other Quest personnel communicated with Friedman regularly in 1997 about Quest's attempts to market the venture plans. Dec. Friedman, Exh. 1-25. Throughout this period, Plaintiff repeatedly insisted on maintaining the

---

[3] In oral argument, the parties informed the Court that they plan to stipulate that Plaintiff does not intend to seek damages arising out of the KS venture and that the KS venture will not form the basis for liability. Both parties agree that the issue of whether the KS venture constitutes a trade secret will become moot upon submission of the stipulation. Therefore, the Court will not determine whether the KS venture constitutes a trade secret. In making this determination, the Court will not consider evidence related to the KS venture unless it appears inextricably intertwined with the GWG venture.

confidentiality of her marketing plans. Dec. Brophy, Exh. P, Q, R, S, V; Dec. Friedman, Exh. 1, 4, 12, 17, 34. Plaintiff also directly contacted people in the industry attempting to market her ideas. Dec. Brophy, Exh. H-L. She sent out "pitch blurbs" (i.e. summaries of her plans) and copies of her paper. Id. Plaintiff and Quest stopped communicating in December, 1997. Dec. Marder, Depo. Friedman, 287:1-13. Nearly two years later, Plaintiff filed suit against Quest alleging that Quest disclosed her ideas to beauty companies who in turn allegedly utilized her ideas to develop, launch, and promote their own fragrances.

### III. LEGAL STANDARDS

#### A. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of informing the district court the basis of the summary judgment motion, and of demonstrating the absence of a genuine

issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Katz v. Children's Hosp. of Orange County, 28 F.3d 1520, 1534 (9th Cir. 1994). On an issue for which the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once this initial burden is satisfied, the non-moving party is required to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts' showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations omitted); see Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1544 (9th Cir. 1988). Where the standard of proof at trial is preponderance of the evidence, the non-moving party's evidence must be such that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." Anderson, 477 U.S. at 252. The evidence is viewed in the light most favorable to the non-moving party and all justifiable inferences are to be drawn in the non-movants favor. Id. at 255.

## IV. ANALYSIS

This summary judgment motion is limited solely to the issue of whether Plaintiff has a protectable trade secret. In order to support her second claim, misappropriation of trade secrets, Plaintiff must identify the trade secrets at issue and carry the burden of showing that they exist. Imax Corp. v. Cinema Techs.,

Inc., 152 F.3d 1161, 1164 (9th Cir. 1998). Because this is an issue for which Friedman has the burden of proof at trial, Quest need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Quest moves for summary judgment on the basis that Plaintiff's marketing ideas do not constitute protectable trade secrets under California's Uniform Trade Secret Act ("UTSA").

Effective January 1, 1985, California adopted the UTSA which has for the most part, superseded prior California common law on trade secret issues. Cal. Civ. Code § 3426, et seq.; Scott v. Snelling and Snelling, Inc., 732 F. Supp. 1034 (N.D. Cal. 1990) (citation omitted). Section 3426.1(d) of the UTSA defines a trade secret as information that:

> 1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> 2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Section 3426.1(d).

Thus, the test for a trade secret is whether the matter sought to be protected is information 1) which is valuable because it is unknown to others and 2) which the owner has attempted to keep secret. Whyte v. Schlage Lock Co., 125 Cal. Rptr. 2d 277, 286 (Cal. App. 4th Dist. 2002).

### A. Unknown to Others

Information which is not exclusive or is generally in use by good faith competitors cannot be classified as a trade secret. American Paper and Packaging Prods. Inc. v. Kirgan, 228 Cal.

Rptr. 713 (Cal. App. 2nd Dist. 1986). A plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." Imax, 152 F.3d at 1164-1165; See also, Whyte, 125 Cal. Rptr. 2d at 284 (describing a trade secret with particularity permits the defendant to ascertain where the boundaries lie). Quest argues that Friedman's ideas do not constitute trade secrets because she has not defined her trade secret with sufficient specificity; they are not novel, unique, or original; they lack economic value; and the entire mechanism has never been used.

**1. Adequately defined trade secrets**

Plaintiff claims that the joint venture plan for GWG constitutes a trade secret. Friedman describes the totality of the GWG concept as: 1) the idea of a global rock concert featuring female performers as a vehicle for a women's fragrance product launch; 2) using the music industry in any sustained way to launch or promote a fragrance; 3) having the consumer pay for the product launch with the purchase of concert tickets, pay-per-view or CDs; 4) sampling or distributing the fragrance at the concert; 5) using the guitar as a symbol of advertising; and 6) the traveling photo exhibit and fashion display to accompany the concert. Dec. Friedman, ¶ 10.[4]

---

[4] Quest objects to this description stating that it contradicts the GWG venture paper (Friedman's Exhibit 30) and the answers to her interrogatories (Friedman's Exhibit 33, Interrogatories 7 and 15). The Court finds that number 4 was not explicitly stated in her venture paper, but is stated in her answers to the interrogatories. Friedman's description does not

The Court finds that this description and the answers to the interrogatories state with sufficient particularity the trade secret which Friedman alleges Quest misappropriated. The descriptions permit the defendant to identify the boundaries within which the alleged secret lies. Whyte, 125 Cal. Rptr. 2d at 286. The GWG venture, the descriptions, and the answers to the interrogatories are drafted with sufficient detail to permit Quest to identify and understand the allegedly protected information.[5] Id.

In both the declaration and the answers to the interrogatories, Plaintiff indicates that it is the entire venture proposal itself which is unique, valuable and constitutes a trade secret. Dec. Friedman, Answers Interrog., at 149; Dec. Friedman, ¶ 10 ("[T]his combination of marketing ideas, methods and plans was novel, unique and valuable."). Courts have recognized that under California law a trade secret can exist from a combination of components, even if the individual components would not qualify as trade secrets. See Vermont

---

contradict her answers to the interrogatories or her venture paper. Both her answers and her venture paper provide more details about her marketing plan, but they express the same ideas summarized in Friedman's declaration. Dec. Friedman, Exh. 33 at 149-153. Quest's other objections to this paragraph have been considered and overruled.

[5] Quest also states that Plaintiff has failed to identify which of the elements of her venture material are secret and which have been "lost" after Quest allegedly disclosed portions of her work. Memorandum, at 12. The case Quest relies on is one in which a third party disclosed the work, thereby putting the trade secret in the public domain. See Religious Tech. Ctr. v. Netcom On-Line Communication Serv., 923 F. Supp. 1231, 1256 (N.D. Cal. 1995). In Religious Technology, the Court indicated that had the defendant been in privy with any of the alleged misappropriators, he would have been equitably estopped from raising their previous public disclosure as a defense. Id. Similarly in this case, Quest cannot argue that Friedman lost her trade secret to the public domain because Quest disclosed it.

10

Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142, 147 (2d Cir. 1996) (applying California law). This is not a situation in which Plaintiff has failed to claim a trade secret in the entire mechanism. Cf. Schneider v. Leggett & Platt, Inc., 1992 U.S. Dist. Lexis 10587 (N.D. Cal. July 7, 1992). Nor is it a situation in which the Court has heard a variety of definitions and is unable to determine what information Plaintiff wishes to protect. Cf. Vital State Can. v. Dreampak, LLC, 2003 WL 23197952, *6 (D.N.J. Dec. 30, 2003) (finding that trade secret not specifically defined when plaintiff changed definition several times including wavering between whether the trade secret was a combination of elements or each individual element). Plaintiff has adequately defined her trade secret so that Defendant is able to understand the allegations.

The Court does not find that Plaintiff's answers in her deposition require a different conclusion. See e.g., Dec. Marder, Exh. A, at 42:18-43:9, 316:1-10, 322:17-323:7; 331:20-332:11. Although Friedman's deposition statements do not clearly delineate the boundaries of her trade secrets, Quest was already aware of those boundaries due to Plaintiff's venture proposals and her answers to the interrogatories.

**2. Generally known in the industry**

Quest alleges that Plaintiff's marketing ideas are not trade secrets because they are not novel, unique, or original and are generally known in the industry. Information which is generally known to the public or to those persons who are skilled in the trade does not qualify as a trade secret. Cal. Civ. Code §

3426.1(d); <u>Whyte</u>, 125 Cal. Rptr. 2d at 286. Information does not have to be novel or nonobvious. <u>Imi-Tech Corp. v. Gagliani</u>, 691 F. Supp. 214, 231 (S.D. Cal. 1986). All that is required is a showing that there would be difficulty in acquiring the information except by use of improper means. <u>Id.</u> Under California law, information can be a trade secret even though it is readily ascertainable, so long as it has not yet been ascertained by others in the industry. <u>Abba Rubber Co. v. Seaquist</u>, 286 Cal. Rptr. 518, 529 (Cal. App. 4th Dist. 1991).[6]

    Defendant presents evidence that some of Plaintiff's ideas were already utilized in the fragrance industry. Specifically, Quest's expert, Rühland, analyzes each of the ventures. With regard to GWG she states: the name is already in use; personal empowerment and global themes have been previously used; the idea of an all-woman concert with corporate sponsorship is not new; using celebrities to promote fragrances is not new; a charity subtheme is not new; the sponsorship of a musical event by a fragrance company is not new; a fragrance company's use of rock music concepts and imagery has already been implemented as has the idea of a multimedia exhibit of guitar heroines; Plaintiff's pricing, distribution and targeting strategies are either not new or not marketable. <u>Dec. Rühland</u>, Exh. 1.

    Rühland gives several specific examples of companies that have previously used the ideas incorporated in Plaintiff's GWG

---

[6] The Court notes the distinction that although readily ascertainable is not part of the definition of a trade secret in California, it is available as a defense to misappropriation. <u>Abba</u>, 286 Cal. Rptr. at 529, n 9; <u>Imax</u>, 152 F.3d at 10. In this motion, we are considered about whether the information at issue conforms with the definition of a trade secret.

venture. For example, when speaking about the female rock concert sponsorship, she states that corporate sponsorship is common. Id., at 10. However Plaintiff's ideas involve more than just sponsoring an event. Rühland also states that many sponsors view the all-female rock concert Lilith Fair as "an ideal venue for reaching young women." However, most of the examples that she gives of the distribution of products at Lilith Fair occur after 1997 (when Plaintiff met with Quest).

Defendant also presents several high-profile examples of fragrance manufacturers using concerts and other entertainment venues to distribute samples and fragrances with musical themes. Id. at 11-12. Although these examples all contain certain elements of Plaintiff's marketing plan, none of them are the same as Plaintiff's plan.

Plaintiff offers evidence in opposition to Defendant's assertion that her ideas were not unique and were known in the general population. On January 8, 1997, Quest signed a confidentiality and non-competition agreement with Friedman acknowledging that, "Friedman has created, developed and acquired certain unique and valuable ideas, theories, plans, information and contacts concerning the Venture." Dec. Friedman, Exh. 29. The agreement defines venture as "involving a musical entertainment event, which event is intended to launch the marketing effort for a new fragrance using concepts and symbols normally identified with the music industry." Friedman and Austin, from Quest, had several conversations in which Austin expressed that Friedman's ideas were brilliant and had never been

13

done before; Yves [from Quest] loved Friedman's ideas, thought they were brilliant, and wanted to exploit them as soon as possible; and that there was nothing similar to Plaintiff's ideas at this time, and that Austin would tell her if there was something similar. Exh. 1, at 19; Exh. 5, at 39; Exh. 7, at 48.

Quest's own expert witness, Rühland, acknowledges that at least some of Friedman's ideas are novel and unique. Dec. Rühland, Exh. 1, at 5, 8, 19, 22. Rühland qualifies her acknowledgment by noting that Friedman's unique/novel ideas have never been utilized in the fragrance industry. The extent to which they were never used before Friedman spoke with Quest supports the assertion that they are original. The extent to which the ideas were utilized after Plaintiff met with Quest addresses the issue of misappropriation, which is not currently before the Court.[7]

In addition, Plaintiff's expert witness, Gabriella Pellinger, testifies that Friedman's proposals contain unique aspects presenting breakthrough opportunities in the fragrance marketing industry not previously utilized. Dec. Pellinger, ¶ 8. Prior to the development of Friedman's proposals, fragrances were generally launched and promoted against a backdrop of fashion and retail. Id. ¶ 10. Plaintiff's idea to promote the product in the context of the entertainment medium was "strikingly novel."

---

[7] Similarly, Quest cites to Plaintiff's response to the undisputed facts to establish that Plaintiff's idea is not a trade secret. Plaintiff does not dispute that a rock concert or pay-per-view telecast of a rock concert has not been branded together with a fragrance called "Girls With Guitars." Plaintiff's Statement of Genuine Issues in Opposition, ¶¶ 32-1, 32-2 at 67. This supports that the idea is novel, unique and original and not generally known in the industry. The extent to which the idea has since been implemented addresses the issue of misappropriation.

Id. ¶ 11.

Quest objects to Pellinger's testimony on the basis that she did not do her own research and has retired from the industry. Evidentiary Objection to Pellinger. However, her deposition reveals that she did not retire from the industry until the late 1990's. Supp. Dec. Marder, Exh. L., at 272:11. The events in this case occurred during 1996 and 1997, at which time she was still working. Her experience in the industry is extensive, and it appears that the testimony relied upon is based on her extensive experience rather than research. Dec. Pellinger, Exh. 35; Supp. Dec. Marder, Exh. L, at 266:20-267:3. The Court finds that Pellinger is qualified as an expert to testify about the industry practice and procedure as it existed when she was in the industry.[8] The Court's finding regarding Pellinger's qualification is limited solely to her testimony regarding the industry's practice and procedure.

In summary, Plaintiff's evidence supports that there is a genuine issue of fact regarding whether her marketing plan was generally known to the public or to the industry.

**3. Value**

In order to be considered a trade secret, information must have economic value which provides the holder with a substantial business advantage. Morlife, Inc. v. Perry, 66 Cal. Rptr. 2d

---

[8] Quest also objects that Pellinger lacks knowledge about well-known business alliances occurring in the industry. This goes to the weight of her testimony, not its admissibility. In addition, all of Pellinger's testimony regarding the use of "Friedman's ideas, methods, and plans" address the issue of misappropriation rather than whether Friedman's ideas are trade secrets. Therefore, it is irrelevant to this motion. Quest also objects that Friedman's testimony is beyond the scope of the expert report that is attached to her declaration as Exhibit 36. The testimony which the Court relies on is found in Exhibit 36.

15

731, 736 (Cal. App. 2nd Dist. 1997). The value can be actual or potential, and the information can be valuable either to the holder of the information or those who do not possess it. Religious, 923 F. Supp. at 1253. Economic value can be shown by evidence of the resources invested in producing the information, the precautions taken to protect its secrecy, and the willingness of others to pay for its access. Id.

Quest argues that Plaintiff's venture plans cannot constitute trade secrets because they lack value. Defendant reasons that the economic value of Plaintiff's marketing ideas derive from their proper execution rather than from their secrecy. Memo., at 17-18. Defendant also states that Plaintiff's marketing ideas will become known to the public the instant they are used. Id., Reply, at 17.

Courts have found that marketing plans constitute trade secrets. Morton, 812 F. Supp. at 1073-74; Whyte, 125 Cal. Rptr. 2d at 288. In Morton, the court found that Hard Rock Cafe's general marketing plan constituted a trade secret. Morton, 812 F. Supp. at 1073-74. In Whyte, the court concluded that a company's marketing strategy and plan (including its five-year plan) constituted trade secrets. Whyte, 125 Cal. Rptr. 2d at 288.

Plaintiff's ideas are marketing plans for fragrances. They might contain details that continue to remain secret after the ventures' implementations. However, this is not a relevant inquiry in determining whether a trade secret exists. Once a trade secret has been exposed to the public it is no longer protected. Religious Tech., 932 F. Supp. at 1254. Until that

time, it continues to be protected by its trade secret status. Therefore, the fact that the marketing plan may eventually enter the public domain does not prevent it from being a trade secret.

In considering whether Plaintiff's plans had value, the Court considers the amount of effort the parties spent in trying to promote the plans. Between January, 1997 through September, 1997, the parties communicated regularly. Dec. Friedman, Exh. 1-25. Quest was attempting to market Friedman's ideas to various companies and represented to Plaintiff that it was expending extensive time and resources in such attempts. Id. Quest obviously believed that the information was valuable, and it expressed this belief to Plaintiff. Id., Exh. 2, at 24 ("How are you going to spend your millions?"). As explained *infra*, Plaintiff took precautions to ensure that the marketing plans remained secret. All of these efforts support a finding that the information possessed independent economic value as a result of its secrecy.

4. "Entire Mechanism"

Defendant argues that Plaintiff's entire venture cannot form the basis for a theft of a trade secret claim since the "entire mechanisms" have never been utilized. This argument pertains more to a misappropriation claim than it does to determining if a trade secret exists. The Court has already determined that Plaintiff has sufficiently described her trade secrets.

---

[9] Despite Quest's arguments, Morton does not compel a different conclusion. In Morton, the marketing plan had already been exposed to the public. Morton, 812 F. Supp. at 1073-74. The issue was whether there were still sufficient unknown aspects of the plan to constitute a trade secret. Here, in contrast, the marketing plan had yet not been exposed to the public.

17

Defendant can argue in the misappropriation context whether all or part of the elements have been utilized.

### B. Secrecy

The second requirement for a trade secret is that the owner has attempted to keep the information secret. Cal. Civ. Code § 3426.1. The owner must take efforts which are reasonable under the circumstances to maintain secrecy. Id.; Religious Tech., 923 F. Supp. at 1253. Among the factors repeatedly considered by courts are: restricting access and physical segregation of information, confidentiality agreements, marking documents with warnings or reminders of confidentiality. In re Providian, 116 Cal. Rptr. 2d 833, 842. Quest states that Plaintiff did not keep her marketing ideas secret because she repeatedly disclosed key aspects of her alleged trade secrets in attempts to try to solicit interest in her ideas. Memo., at 23-24.

Quest signed a confidentiality and non-competition agreement with Friedman in January, 1997. Dec. Friedman, Exh. 29. She marked her venture plans with "confidential" stamps. Id., Exh. 30-31. The evidence submitted by both parties indicates that Plaintiff repeatedly insisted on confidentiality and non-disclosure agreements before revealing all of her information. See Dec. Brophy, Exh. P, Q, R, S, V; Dec. Friedman, Exh. 1, 4, 12, 17, 34. Plaintiff distributed "pitch blurbs" and copies of her FIT paper to market her venture plans. However, the "pitch blurbs" and her paper do not contain all of the information found in her plans. The evidence regarding Plaintiff's efforts to maintain secrecy is sufficient to support that a genuine issue of fact remains. The Court finds, for purposes of this summary

judgment motion, that Plaintiff took reasonable efforts to maintain the secrecy of her ideas.

## V. CONCLUSION

Because the Court finds that a genuine issue remains, the Court hereby **DENIES** Defendant's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: *April 20, 2004*

*/s/ Lourdes G. Baird*
LOURDES G. BAIRD
**United States District Judge**